IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | 1:20-CR-00092-ELR-1 |
| | * | |
| TAMIKA ANDERSON, | * | |
| | * | |
| Defendant. | * | |
| | * | |

_____

**ORDER**

_____

This matter is before the Court on Defendant Tamika Anderson's emergency motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [Doc. 18]. After due consideration, the Court enters the following Order denying Defendant's motion.

**I.   BACKGROUND**

On March 12, 2020, Defendant pleaded guilty to aggravated identity theft. [Doc. 6-1]. On June 16, 2020, Defendant was sentenced to a term of imprisonment of twenty-four (24) months, to be followed by one year of supervised release. [Doc. 14]. Defendant now requests that this Court commute her custodial time to time-served and allow her to begin supervised release, with one of the conditions being home confinement. [Doc. 18].

**II.     DISCUSSION**

The First Step Act of 2018, Pub. L. No. 115-391 § 603, 132 Stat. 5194 (Dec. 21, 2018), enables a defendant to file a motion for compassionate release directly with the sentencing court.  As revised by the First Step Act, 18 U.S.C. § 3582(c)(1)(a)(A)(i) provides that:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by warden of the defendant's facility, whichever is earlier, may reduce the terms of imprisonment…after considering the factors set forth in section 3553(a)[1] to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction…

18 U.S.C. § 3582(c)(1)(a)(A)(i).

Defendant argues that she is entitled to compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) because her medical condition constitutes an "extraordinary and compelling reason" warranting a reduction under subsection (i).  Defendant contends that she suffers from hypertension, a condition which makes her more

---

[1] 18 U.S.C. §3553(a) sets forth factors to be considered in imposing a criminal sentence, including: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to afford adequate deterrence, to protect the public, and to provide the defendant with training, care, and/or treatment; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed as set forth in the Sentencing Guidelines; (5) any pertinent policy statement; (6) the need to avoid sentence disparity; and (7) the need to provide restitution to victims.

susceptible to COVID-19. [Doc. 18]. Before the enactment of the First Step Act in December 2018, compassionate release was only available if the BOP filed a motion requesting it. 18 U.S.C. § 3582 (as effective Nov. 2, 2002 to Dec. 20, 2018); see also U.S.S.G. § 1B1.13 ("Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce the term of imprisonment. . ."). Now, however, the First Step Act enables a defendant to file a motion for compassionate release directly with the sentencing court under certain circumstances. 18 U.S.C. § 3582(c)(1)(A)(i).

On or about November 4, 2020, Defendant requested the BOP reduce her sentence based on concerns about COVID-19 and her medical condition. [Doc. 18]. On November 17, 2020, her request was denied. [Id. at 2].

The Court first turns to Defendant's request for home confinement under the First Step Act based on her ailment and possible exposure to COVID-19. The First Step Act of 2018 modifies 34 U.S.C. § 60541(g)(1) to provide that:

> (A)  The Attorney General shall conduct a pilot program to determine the effectiveness of removing eligible elderly offenders and eligible terminally ill offenders from Bureau of Prisons facilities and placing such offenders on home detention until the expiration of the prison term to which the offender was sentenced.
>
> (B)  In carrying out a pilot program as described in subparagraph (A), the Attorney General may release some of all eligible elderly offenders and eligible terminally ill offenders from the Bureau of Prisons facilities to home detention upon written request from either the Bureau of Prisons or eligible elderly offender or terminally ill offender.

As to the placement of terminally ill inmates on home confinement, the First Step Act defines an "eligible terminally ill offender" as an offender in Bureau of Prisons ("BOP01") custody who, *inter alia*, "has been determined by a medical doctor approved by the BOP to be" either "in need of care at a nursing home, intermediate care facility, or assisted living facility" or "diagnosed with a terminal illness." 34 U.S.C. § 60541(g)(5)(D). Under the First Step Act, the discretion to release a prisoner to home confinement lies solely with the Attorney General and by delegation the BOP. 34 U.S.C. § 60541; see also DeJesus v Woods, No. 2:19-CV-121-WHA, 2019 WL 3326199, at *4 (M.D. Ala. June 21, 2019) (collecting cases).

Defendant does not state that she qualifies as a terminally ill offender. [Doc. 18]. Even if Defendant did meet the definition of a terminally ill offender, the First Step Act does not require the BOP to place eligible prisoners on home confinement; instead, the Act provides the BOP with the sole discretion to do so. Thus, Defendant is not entitled to placement on home confinement. Further, the Court notes that "the BOP's placement determinations, including those regarding home confinement, are expressly insulated from judicial review." De Jesus, 2019 WL 3326199, *4 (citing Reeb v Thomas, 636 F.2d 1224, 1227 (9th Cir. 2011)).

Defendant asserts that she should be compassionately released based on her medical condition, the BOP's response to the COVID-19 pandemic, her efforts to improve her life while incarcerated and her support system outside of prison. [Doc.

4

18]. The Government opposes Defendant's motion for compassionate release, pointing out that Defendant failed to use prescribed medications for hypertension when afforded the opportunity prior to her incarceration, but now relies on that same illness as a reason she should be compassionately released. [Doc. 20]. Defendant acknowledges that in the past, she was non-compliant, failing to take her medicine as prescribed. [Doc. 21]. Defendant is a thirty-year-old female and hypertension treatment is available in the BOP facility. [Id.]

Although the Court certainly recognizes the devastating effects of COVID-19, and the Court is sympathetic to Defendant's medical issues, the Court finds that Defendant has not demonstrated that her medical condition rises to the level of extraordinary and compelling circumstances that warrant compassionate release. The Court also cannot find, based on Defendant's submissions that she is receiving inadequate treatment or that her condition has declined since her sentencing such that the BOP is no longer capable of providing adequate treatment. As such, Defendant has not shown that she is entitled to the relief she requests.[2]

---

[2] Because Defendant has not shown that she qualifies for relief, a discussion of the Section 3553(a) factors is not warranted.

## III. CONCLUSION

In light of the foregoing, Defendant's motion [Doc. 18] is **DENIED**.

**SO ORDERED**, this 13th day of January, 2021.

_Eleanor L. Ross_
Eleanor L. Ross
United States District Judge
Northern District of Georgia